## UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| **BILLY BROWN,** ) | |
| ) | |
| **Petitioner,** ) | |
| ) | |
| **v.** ) | **Case No. 17-CV-0651-CVE-CDL** |
| ) | |
| **DAVID ROGERS, Warden,**[1] ) | |
| ) | |
| **Respondent.** ) | |

## <u>OPINION AND ORDER</u>

Before the Court is petitioner Billy Brown's petition for a writ of habeas corpus under 28

U.S.C. § 2254 (Dkt. # 1). Brown challenges the lawfulness of his custody under the judgment

entered against him in Tulsa County District Court Case No. CF-2014-5068. He contends that this

judgment was obtained in violation of his Fourteenth Amendment right to due process because:

(1) the State of Oklahoma ("the state") lacked jurisdiction to prosecute him for a crime he

committed in Indian country (claim one); (2) the state lacked jurisdiction to prosecute him because

he did not waive his federal right to a grand jury indictment (claim two); (3) state courts deprived

him of due process by failing to comply with state and federal law, failing to consider the merits

of his appellate and postconviction claims, and denying his request for a hearing (claim three); and

(4) the state discriminated against him, denied him equal protection of the law, and denied him

due process because he is "disabled, incompetent, poor [and] black" (claim four). Dkt. # 1, at 5-

---

[1] Brown presently is incarcerated at the Joseph Harp Correctional Center ("JHCC"), in Lexington, Oklahoma. The Court therefore substitutes the JHCC's current warden, David Rogers, in place of Luke Pettigrew as party respondent. Fed. R. Civ. P. 25(d); Rule 2(a), <u>Rules Governing Section 2254 Cases in the United States District Courts</u>. The Clerk of Court shall note on the record this substitution.

10.    Having carefully considered the parties' arguments in the petition, responses, and supplemental briefs (Dkt. ## 1, 16, 17, 31, 32, 38, 39), the record of state court proceedings (Dkt. ## 18, 20), and applicable law, the Court finds and concludes that the petition shall be denied.

## BACKGROUND

In August 2015, a jury found Brown guilty of first-degree murder for fatally stabbing his girlfriend, Sukey Walters, in the apartment the two shared in Tulsa.  Dkt. # 11-1, at 1-2.[2]  As recommended by the jury, the trial court sentenced Brown to life without the possibility of parole. Id. at 1.  The Oklahoma Court of Criminal Appeals ("OCCA") affirmed Brown's judgment and sentence on direct appeal.  Id. at 8.  Brown subsequently filed two applications for postconviction relief, the state district court denied both applications, and the OCCA affirmed the denial of both applications.  Dkt. ## 11-2 through 11-5.

Brown filed the instant petition in December 2017, and respondent moved to dismiss it, primarily asserting that Brown had not exhausted available state remedies.  Dkt. # 11; see 28 U.S.C. § 2254(b)(1)(A); Grant v. Royal, 886 F.3d 874, 890-92 (10th Cir. 2018) (discussing exhaustion requirement and fair presentation of federal claims in state court).  In September 2018, the court[3] determined that Brown had exhausted available state remedies by presenting his first three claims to the OCCA through his second postconviction appeal, but that he had not presented his fourth claim in state court and, thus, had procedurally defaulted that claim.  Dkt. # 13.  The court denied respondent's motion to dismiss the petition, directed Brown to file a response addressing whether he could overcome the procedural default of claim four, and directed respondent to file a response addressing the merits of claims one, two, and three.  Id.  Because

---

[2] The Court's citations refer to the CM/ECF pagination.

[3] The Honorable Judge John E. Dowdell presided over this case until it was reassigned to the undersigned in October 2022.  Dkt. # 40.

Brown did not file an optional reply brief, this matter was fully briefed and ripe for adjudication in November 2018.

In July 2020, while Brown's petition was pending, the United States Supreme Court issued two decisions relevant to Brown's first claim—McGirt v. Oklahoma, 591 U.S. 894 (2020), and Sharp v. Murphy, 591 U.S. 977 (2020) ("Murphy II").  In February 2021, the court reviewed the case materials, appointed habeas counsel for Brown, and directed the parties to submit supplemental briefs addressing (1) whether these decisions had any impact on claim one, (2) whether Brown had any further state postconviction remedies available as to claim one, and, (3) if any state remedies were available, whether further state postconviction proceedings were necessary before adjudication of the petition.  Dkt. # 28.  Both parties filed supplemental briefs addressing these issues in March 2021.  Dkt. ## 31, 32.  On consideration of those briefs, the court granted Brown's request to stay this habeas proceeding, and ordered this matter administratively closed.  Dkt. # 33.  On Brown's motion, the court reopened this matter in June 2022, following the conclusion of Brown's third state postconviction appeal, and reinstated the petition.  Dkt. # 37.  As directed by the court, both parties filed supplemental briefs.  Dkt. ## 38, 39.

## DISCUSSION

A federal court may grant habeas relief to a petitioner in custody pursuant to a state court judgment "only on the ground that [the petitioner] is in custody in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2254(a); see also Wilson v. Corcoran, 562 U.S. 1, 5 (2010) ("[I]t is only noncompliance with *federal* law that renders a State's criminal judgment susceptible to collateral attack in the federal courts.").  But "a state prisoner must exhaust available state remedies before presenting his claim to a federal habeas court."  Davis v Davila, 582 U.S. 521, 527 (2017); see 28 U.S.C. § 2254(b).  The exhaustion requirement gives "state courts one full

opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." O'Sullivan v. Boerckel, 526 U.S. 838, 844-45 (1999). A petitioner satisfies the exhaustion requirement by demonstrating that he "fairly presented" his federal claim to the state's highest court, either on direct appeal or in a postconviction proceeding, in a procedural manner permitting the court to consider the claim on the merits. Castille v. Peoples, 489 U.S. 346, 351 (1989). A federal court ordinarily should dismiss an unexhausted federal claim so that the petitioner can pursue available state remedies. Grant, 886 F.3d at 891-92. However, if further state court review of the claim would be barred by an adequate and independent state procedural rule, the federal court may treat the claim as exhausted but procedurally defaulted. Id. at 892.

Ordinarily, a court may not review "federal claims that were procedurally defaulted in state court." Davila, 582 U.S. at 527. This includes claims that the state court denied based on an adequate and independent state procedural rule, and claims that a federal court deems procedurally defaulted through application of an anticipatory procedural bar. Id.; Coleman v. Thompson, 501 U.S. 722, 732 (1991) ("A habeas petitioner who has defaulted his federal claims in state court meets the technical requirements for exhaustion; there are no state remedies any longer 'available' to him."), holding modified on other grounds by Martinez v. Ryan, 566 U.S. 1 (2012). A petitioner "may overcome the prohibition on reviewing procedurally defaulted claims" only by demonstrating either cause for the procedural default and resulting prejudice or that the federal court's failure to review the claim will result in a fundamental miscarriage of justice. Davila, 582 U.S. at 527; Coleman, 501 U.S. at 750. The miscarriage-of-justice exception, "however, is a markedly narrow one, implicated only in 'extraordinary case[s] where a constitutional violation

4

has probably resulted in the conviction of one who is actually innocent.'" Magar v. Parker, 490 F.3d 816, 820 (10th Cir. 2007) (quoting Phillips v. Ferguson, 182 F.3d 769, 774 (10th Cir. 1999)).

When a petitioner fairly presents a federal claim in state court, and the state court denies that claim on the merits, a federal court may grant habeas relief on that claim only if the petitioner makes a threshold showing that the state court's decision either (1) "was contrary to . . . clearly established Federal law," 28 U.S.C. § 2254(d)(1), (2) "involved an unreasonable application of clearly established Federal law," id., or (3) "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," id. § 2254(d)(2). Regardless of whether the prisoner challenges either the legal underpinnings of the state court's decision, under § 2254(d)(1), or the factual underpinnings of the state court's decision, under § 2254(d)(2), the prisoner must show that no fairminded jurist would agree with the state court's decision. See Mays v. Hines, 592 U.S. 385, 391 (2021) ("Because a Tennessee court considered and rejected [the petitioner's] theory, a federal court 'shall not' grant a writ of habeas corpus unless the earlier decision took an 'unreasonable' view of the facts or law." (quoting 28 U.S.C. § 2254(d))); Dunn v. Madison, 583 U.S. 10, 12 (2017) ("A habeas petitioner meets [§ 2254(d)'s] demanding standard only when he shows that the state court's decision was 'so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.'" (quoting Harrington v. Richter, 562 U.S. 86, 103 (2011)); Richter, 562 U.S. at 101 ("A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." (quoting Yarborough v. Alvarado, 541 U.S. 652, 664 (2004)); Renico v. Lett, 559 U.S. 766, 779 (2010) (noting that § 2254(d) "prevents defendants—and federal courts—from using federal habeas corpus review as a vehicle to second-guess the reasonable decisions of state courts").

5

However, even if a petitioner makes the threshold showings necessary either to overcome the procedural default of federal claims or to overcome § 2254(d)'s bar to relief, the petitioner is not entitled to federal habeas relief. See Brown v. Davenport, 596 U.S. 118, 132 (2022) ("Congress invested federal courts with discretion when it comes to supplying habeas relief—providing that they 'may' (not must) grant writs of habeas corpus, and that they should do so only as 'law and justice require.'" (quoting 28 U.S.C. §§ 2241, 2243)); Milton v. Miller, 744 F.3d 660, 670-71 (10th Cir. 2014) (explaining that satisfaction of § 2254(d)'s standards "effectively removes AEDPA's prohibition on the issuance of a writ" and "requires [a federal habeas court] to review de novo" petitioner's claims). And, when a federal court reviews a petitioner's federal claims de novo and finds the existence of a constitutional error, the federal court must apply a harmless-error analysis to determine whether habeas relief is warranted. See Davenport, 596 U.S. at 134 (explaining that "a federal court must deny relief to a state habeas petitioner who fails to satisfy either this Court's equitable precedents or AEDPA. But to grant relief, a court must find that the petitioner has cleared both tests"); Fry v. Pliler, 551 U.S. 112, 121-22 (2007) (explaining that if the federal court finds a constitutional error on de novo review, the court "must assess [its] prejudicial impact . . . under the 'substantial and injurious effect' standard set forth in Brecht [v. Abrahamson, 507 U.S. 619 (1993)], whether or not the state appellate court recognized the error and reviewed it for harmlessness"). Under the Brecht standard, a federal court may grant habeas relief only if the court "is in grave doubt as to the harmlessness of an error that affects substantial rights." O'Neal v. McAninch, 513 U.S. 432, 445 (1995).

I.    **Claim one:  Indian country jurisdiction claim**

Brown claims that the state "lacked jurisdiction over [a] crime committed by an Indian, upon an Indian, in Indian country, inside an Indian reservation." Dkt. # 1, at 5. The OCCA twice

rejected this claim. But because the law relevant to this claim was unsettled during Brown's quest for postconviction relief, a brief discussion of that law provides context for the claim and the OCCA's decisions.

After Brown's judgment was final and the OCCA affirmed the denial of his first application for postconviction relief, the United States Court of Appeals for the Tenth Circuit "decided Murphy v. Royal, 875 F.3d 896 (10th Cir. 2017) ["Murphy I"], holding that a large portion of the State of Oklahoma is 'Indian country' for purposes of the Major Crimes Act, which provides for exclusive federal jurisdiction over certain enumerated crimes committed by Indians in 'Indian country.' 18 U.S.C. § 1153(a)." Pacheco v. Habti, 62 F.4th 1233, 1237 (10th Cir. 2023). Relying on Murphy I, Brown filed a second application for postconviction relief, asserting that he was wrongly prosecuted in state court for a murder that he committed in Indian country. Dkt. # 17-6, at 1. The state district court rejected this claim reasoning that the mandate had not issued in Murphy I and that, even if it had, Brown's reliance on Murphy I was misplaced because Brown presented no evidence demonstrating that he is Indian.[4] Dkt. # 11-4, at 6-7. In October 2018, when it affirmed the denial of Brown's second application for postconviction relief, the OCCA noted that the mandate had been issued in Murphy I, but the OCCA appeared to agree with the state district court's determination that the Murphy I claim lacked merit. Dkt. # 17-8, at 4-7.

Nearly two years later, the Supreme Court held in McGirt that because Congress did not disestablish the Muscogee (Creek) Nation Reservation the land within the boundaries of that reservation is "Indian country," as defined in 18 U.S.C. § 1151(a), and, as a result, the federal

---

[4] The relevant federal statutes do not define the term "Indian," but the Tenth Circuit applies a two-part test to determine jurisdiction under §§ 1152 and 1153, inquiring whether either the defendant or the victim "(1) has some Indian blood; and (2) is recognized as an Indian by a tribe or by the federal government." United States v. Prentiss, 273 F.3d 1277, 1280 (10th Cir. 2001) (quoting Scrivner v. Tansy, 68 F.3d 1234, 1241 (10th Cir. 1995)).

government has exclusive jurisdiction under the Major Crimes Act, 18 U.S.C. § 1153(a), to prosecute certain crimes committed within those boundaries by Indian defendants. McGirt, 594 U.S. at 933-34. The McGirt Court further stated that the General Crimes Act, 18 U.S.C. § 1152, "provides that federal law applies to a broader range of crimes by or against Indians in Indian country" and that "[s]tates are otherwise free to apply their criminal laws in cases of non-Indian victims and defendants, including within Indian country." Id. at 933; see also Prentiss, 273 F.3d at 1278 (noting that "18 U.S.C. § 1152 establishes federal jurisdiction over 'interracial' crimes, those in which the defendant is an Indian and the victim is a non-Indian, or vice-versa"). Relying on its decision in McGirt, the Supreme Court summarily affirmed Murphy I. Murphy II, 591 U.S. 977, 977.

In July 2021, after the court stayed this habeas proceeding, Brown, through habeas counsel, filed a third application for postconviction relief in state court. Dkt. # 35 at 1. In that application, Brown relied on McGirt to argue that the state lacked jurisdiction to prosecute him "because the victim of his crime was an enrolled member of the Seminole Nation and because the crime occurred within the Muscogee (Creek) Nation" Reservation. Dkt. # 35-1, at 2. The state district court found that the murder victim, Walters, was Indian and that the murder was committed in Indian country. Id. at 2. The state district court nonetheless relied on the OCCA's decision in State ex rel. Matloff v. Wallace, 497 P.3d 686 (Okla. Crim. App. 2021) ("Wallace"), to deny relief. Id. at 3-6. In Wallace, the OCCA held "that McGirt and [the OCCA's] post-McGirt decisions recognizing [that several reservations in Oklahoma had not been disestablished] shall not apply retroactively to void a conviction that was final when McGirt was decided" and that "[a]ny statements, holdings, or suggestions to the contrary in [the OCCA's] previous cases are hereby

8

overruled." <u>Wallace</u>, 497 P.3d at 689. The OCCA likewise relied on <u>Wallace</u> to affirm the denial of Brown's third application for postconviction relief. Dkt. # 35-2.

In June 2022, the Supreme Court issued a third decision relevant to Brown's claim. In <u>Oklahoma v. Castro-Huerta</u>, 597 U.S. 629, 647 (2022), the Supreme Court held that that the General Crimes Act, 18 U.S.C. § 1152, "does not preempt state jurisdiction over crimes committed by non-Indians against Indians in Indian country." The <u>Castro-Huerta</u> Court further held that Public Law 280 is a not a source of preemption; that the balancing test developed in <u>White Mountain Apache Tribe v. Bracker</u>, 448 U.S. 136 (1980), "does not bar the State from prosecuting crimes committed by non-Indians against Indians in Indian country"; that certain treaties "do not preempt Oklahoma's authority to prosecute; and that the Oklahoma Enabling Act does not preempt Oklahoma's authority to prosecute (indeed, it solidifies the State's presumptive sovereign authority to prosecute)." <u>Id.</u> at 647-51, 655-56.

Taking this evolution of the law into account, the parties now agree that <u>McGirt</u> affords Brown no relief on claim one because he is not Indian, and that <u>Castro-Huerta</u> precludes relief on claim one for that same reason even though Brown's victim was Indian. Dkt. ## 38, 39. Having carefully considered the record of state court proceedings, the parties' arguments, and applicable law, the Court agrees that federal habeas relief is not warranted as to claim one. The Court therefore denies the petition as to claim one.

## II.    Claim two: grand jury indictment claim

Brown claims that the state court lacked jurisdiction because the "state court failed to advise [him] of his federal right" to a grand jury indictment and failed to obtain Brown's waiver of that right. Dkt. # 1, at 7. Brown presented this claim to the OCCA through his first postconviction appeal, and the OCCA denied relief. Dkt. # 11-3. Respondent contends this claim

is procedurally barred because the OCCA applied an adequate and independent state law procedural rule that bars postconviction relief as to claims that could have been raised on direct appeal. Dkt. # 17, at 12-20.

The OCCA's reasons for rejecting the claim, however, are less than clear. After listing the three issues that Brown raised on direct appeal, the OCCA stated: "All issues previously ruled upon by this Court are *res judicata* and all issues not raised in Brown's direct appeal, which could have been raised, are waived." Dkt. # 11-3, at 1-2. The OCCA then listed the eleven issues that Brown raised in his first application for postconviction relief, describing his third issue as alleging that "the trial court lacked jurisdiction because the record showed no grand jury waiver was signed or read into the record." Id. at 2. The OCCA described the state district court's order denying relief as to this claim as "thorough and complete," noted that the state district court found that this claim was "without merit" because "Oklahoma law allows for prosecution upon filing of a sufficient information which was done in Brown's case," and further noted that the state district court "[a]cknowledg[ed] that jurisdictional claims can be raised at any time . . . [and] found that the [s]tate's information charging Brown with murder was sufficient to invoke the trial court's jurisdiction." Id. at 3. After discussing the state district court's assessment of Brown's other issues and its conclusion that postconviction relief was not warranted, the OCCA stated:

> We agree. The Post-Conviction Procedure Act is not a substitute for a direct appeal, nor is it intended as a means of providing a petitioner with a second direct appeal. [ . . .] [The state district court] correctly determined that Brown's claims, except for his claim of ineffective assistance of appellate counsel, were either addressed on direct appeal or were waived for failure to raise them on direct appeal. In addition, the district court specifically addressed, in detail, even those claims which should have been presented on direct appeal but were not, and found they did not warrant relief.

Id. at 3-5 (internal citations omitted).  The OCCA then (presumably) considered the merits of each of Brown's issues, including the grand-jury indictment waiver issue, when it evaluated whether appellate counsel was ineffective for failing to raise them on direct appeal.  Id. at 5-7.

On this record, it is not clear to this Court whether the OCCA adjudicated this claim on the merits or rejected it on procedural grounds.  Regardless, federal habeas relief is not warranted for two reasons.  First, assuming the OCCA applied a procedural bar, the Court agrees with respondent that the OCCA's waiver rule is an adequate and independent state procedural rule and that Brown procedurally defaulted claim two.  See Sherrill v. Hargett, 184 F.3d 1172, 1175 (10th Cir. 1999) ("Oklahoma's procedural rule barring post-conviction relief for claims petitioner could have raised on direct appeal constitutes an independent and adequate ground barring review of petitioner's jury instruction claim.").  And, after careful consideration of Brown's response addressing the procedural default of claim four, the Court further agrees with respondent that Brown has not made the showings necessary to overcome the procedural default of this claim.  Dkt. # 17 at 13-20; Dkt. # 16.  Second, to the extent the OCCA adjudicated this claim on the merits, Brown has not argued, much less shown, that no fairminded jurist would agree with the OCCA's decision.  Over five decades ago, a federal district court in this circuit stated:

> [I]t is settled beyond argument that a state may proceed by an Information in a criminal case and need not proceed by way of grand jury Indictment.  Proceeding by way of Information, as done herein by the State of Oklahoma, does not violate the Federal Constitution.  Williams v. Page, 289 F. Supp. 661 (E.D. Okl. 1968); Hampton v. State of Oklahoma, 368 F.2d 9 (Tenth Cir. 1966); Lem Woon v. State of Oregon, 229 U.S. 586, 33 S. Ct. 783, 57 L. Ed. 1340.

Cody v. Page, 296 F. Supp. 961, 962 (W.D. Okla. 1969); see Lem Woon, 229 U.S. at 590 (stating, in 1913, "as this court has so often held, the 'due process of law' clause does not require the state to adopt the institution and procedure of a grand jury").  Thus, to the extent this claim is not procedurally barred, § 2254(d) precludes relief, and this Court denies the petition as to claim two.

## III.    Claim three:  nonspecific due process claim

Brown's third claim broadly asserts that his "conviction [is] contrary to federal laws, and [he was] denied due process."  Dkt. # 1, at 8.  In support of this claim, Brown alleges:

> State courts refused to follow their own rules, laws or constitution; refused to address merits of [his] claims; refused to apply, or comply with U.S. Supreme Court opinions, Acts of Congress, violated U.S. Constitution.

> Petitioner is actually innocent, it was proven in postconviction to be an accident, but state courts refused due process or a hearing.

Id.  Respondent contends, and the court previously suggested, that Brown's nonspecific allegations of one or more due process violations does not state a cognizable habeas claim.  Dkt. # 13, at 7 n.3; Dkt. # 17, at 21.  Because Brown filed the petition without the benefit of counsel, the Court must liberally construe his claims.  Hall v. Bellmon, 935 F.2d 1106, 1110 (10th Cir. 1991).  But the rule of liberal construction neither requires nor permits a court to serve as an advocate for a self-represented litigant by speculating about the federal claim he is attempting to present or by searching through the record for facts that might support that claim.  Id.; see Crawford v. Addison, 526 F. App'x 893, 895 (10th Cir. 2013) (noting that the habeas petitioner appeared pro se but declining "to scour the record for factual support" of an undeveloped "possible thirteenth ground for relief").[5]  Brown's vague and conclusory assertions that state courts refused to comply with state and federal law do not support a cognizable habeas claim.  See Bodine v. Warden of Joseph Harp Corr. Ctr., 217 F. App'x 811, 813 (10th Cir. 2007) (stating that the habeas petitioner "launche[d] a blanket attack on the manner in which the OCCA reviewed his direct appeal, calling the whole process 'inadequate[], ineffective[], and unmeaningful,'" and concluding that "[w]ithout relevant detail, however, his generalized screed does not state a cognizable claim for federal habeas

---

[5] The Court cites all unpublished decisions herein as persuasive authority.  FED. R. APP. P. 32.1; 10th Cir. R. 32.1.

relief"). Further, to the extent Brown contends that he was denied due process during state postconviction proceedings, he likewise fails to state a cognizable habeas claim. <u>See</u> <u>Sellers v. Ward</u>, 135 F.3d 1333, 1339 (10th Cir. 1998) (explaining that "because the constitutional error [the habeas petitioner] raises focuses only on the [s]tate's post-conviction remedy and not the judgment which provides the basis for his incarceration, it states no cognizable federal habeas claim"). Lastly, to the extent Brown asserts that he is actually innocent, that too does not state a cognizable habeas claim. <u>See</u> <u>Farrar v. Raemisch</u>, 924 F.3d 1126, 1131 (10th Cir. 2019) (explaining that "[t]he Supreme Court has repeatedly sanctioned gateway actual innocence claims," as a method to overcome procedural barriers to federal habeas relief, "but the Court has never recognized freestanding actual innocence claims as a basis for federal habeas relief"). For these reasons, the Court denies the petition as to claim three.

## IV.    Claim four: discrimination, due process, and equal protection claim

In claim four, Brown asserts that he suffered "discrimination because of disabilities" and that he was "denied equal protection and due process of law" Dkt. # 1, at 10. In support of this claim, Brown alleges that he was treated unfairly throughout his trial and direct appeal and that appellate counsel raised fewer issues on direct appeal because Brown is "disabled, incompetent, poor [and] black." <u>Id.</u> Respondent contends, and this court previously determined, that this claim is unexhausted and procedurally defaulted. Dkt. # 17, at 23; Dkt. # 13, at 8-11. But the Court finds it unnecessary to consider whether Brown can overcome the procedural default of this claim. Like claim three, claim four "launches a blanket attack" on the fairness of his trial and the appeal process but does not identify any specific constitutional defects suggesting that he is "in custody in violation of the Constitution or laws or treaties of the United States" under the challenged criminal judgment. <u>Bodine</u>, 217 F. App'x at 813. Thus, even if Brown could overcome the

13

procedural default of claim four, the Court finds that federal habeas relief is not warranted as to this claim. The Court thus denies the petition as to claim four.

### *CONCLUSION*

Because Brown has not shown that he is in custody in violation of federal law, the Court concludes that federal habeas relief is not warranted and denies the petition as to all claims raised therein. 28 U.S.C. §§ 2243, 2254(a). The Court further concludes that no certificate of appealability shall issue because reasonable jurists would not "debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." Slack v. McDaniel, 529 U.S. 473, 483-84 (2000) (cleaned up); 28 U.S.C. § 2253(c).

**IT IS THEREFORE ORDERED** that the Clerk of Court shall **note** on the record the substitution of David Rogers, Warden, in place of Luke Pettigrew as party respondent.

**IT IS FURTHER ORDERED** that: (1) the petition for writ of habeas corpus (Dkt. # 1) is **denied**; (2) a certificate of appealability is **denied**; and (3) a separate judgment shall be entered herewith.

**DATED** this 22nd day of May, 2025.

CLAIRE V. EAGAN
UNITED STATES DISTRICT JUDGE